FILED
 2022 Dec-15 PM 12:39
U.S. DISTRICT COURT
    N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SOUTHWESTERN ATHLETIC CONFERENCE, } } } | |
| Plaintiff, } } | |
| v. } } | Case No.: 2:22-cv-00486-RDP |
| URBAN EDGE NETWORK, LLC., HARDY PELT a/k/a VICTOR PELT, TODD BROWN, } } } } | |
| Defendants. } | |

## MEMORANDUM OPINION

This matter is before the court on Defendants Urban Edge Network, LLC, Hardy Pelt, and Todd Brown's (collectively "Defendants") Motion to Dismiss or Transfer. (Doc. # 7). The matter has been fully briefed (Docs. # 7, 12, and 14) and is ripe for review. For the reasons explained below, the Motion (Doc. # 7) is due to be granted.

**I.    Background**

The Southwestern Athletic Conference (the "SWAC," the "Conference," or "Plaintiff"), an intercollegiate athletic conference with member institutions throughout the Southeast and Texas, brought this action against Defendants in April 2022. In its First Amended Complaint (Doc. # 3), Plaintiff alleges that Defendants "entered into an agreement with one or more of Plaintiff's member institutions which purported to give Defendants the right to market or distribute certain games or events involving those [universities]." (Doc. # 3 ¶ 30). The SWAC contends, however, that these universities were not permitted to grant marketing or distribution rights because that power was reserved to the Conference as a condition of the universities' membership. (*Id*. ¶ 34).

Defendants then sought to sell advertising for these university events despite having no licensing rights from SWAC, permission to broadcast any SWAC games, or right to sell advertising with respect to those games. (*Id.* ¶¶ 36-37). Plaintiff references an unnamed third-party advertiser that Defendants contacted in an attempt to sell media rights to which they had no claim. (*Id*. ¶ 38). This third party, who has an existing business relationship with SWAC, reached out to Plaintiff -- presumably to inquire as to whether Defendants had the right to sell the advertising -- at which point Plaintiff informed them that Defendants did not have the right to do so. (*Id*. ¶ 40).

As a result, Plaintiff believes that its relationship with the third party has been harmed and that more business relationships with other of its partners may be harmed in the future as well. (*Id*. ¶¶ 44-45). Count One of Plaintiff's First Amended Complaint seeks a declaratory judgment that Defendants have no right to sell any media or advertising rights. (*Id*. ¶¶ 52-53). Count Two alleges tortious intentional interference with business relations under Alabama law. (*Id*. ¶¶ 54-61). Specifically, Plaintiff contends that Defendants' fraudulent attempts to sell advertising to the third-party sponsor "damage[d] SWAC's reputation and its continuing relationships with sponsors and contractors." (*Id*. ¶ 61).  Count Three alleges defamation, again claiming that Defendants' misrepresentations about the SWAC to the third-party sponsor damaged its relationship with its sponsor. (*Id*. ¶¶ 62-67). Count Four alleges "misrepresentation," pointing still again to the purported damage done to Plaintiff's reputation and business relationships. (*Id*. ¶¶ 68-71). Finally, Plaintiff seeks injunctive relief prohibiting Defendants from "further improper attempts to fraudulently sell SWAC advertising and media rights." (*Id*. ¶ 77). The court need not address the merits of these claims because, as explained below, it lacks personal jurisdiction over Defendants.

II.     **Legal Standard**

A Rule 12(b)(2) motion tests the court's exercise of personal jurisdiction over a defendant.

*See* Fed. R. Civ. P. 12(b)(2). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009); *see also Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999) ("A plaintiff seeking to obtain jurisdiction over a nonresident defendant initially need only allege sufficient facts to make out a prima facie case of jurisdiction.").

"A federal district court in [Alabama] may exercise personal jurisdiction over a nonresident defendant to the same extent that [an Alabama state] court may, so long as the exercise is consistent with federal due process requirements." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008); *see also* Ala. R. Civ. P. 4.2. The Supreme Court has recognized two types of personal jurisdiction that are consistent with these legal requirements: general jurisdiction and specific jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923-24 (2011). Only the latter, specific jurisdiction, is at issue here.

The court applies a two-part analysis in determining whether there is specific personal jurisdiction over a nonresident defendant. *See Cable/Home Cmmc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990); *see also Alexander Proudfoot Co. World Headquarters L.P. v. Thayer*, 877 F.2d 912, 919 (11th Cir. 1989). First, the court considers the jurisdictional question under the state long-arm statute. *See Cable/Home Commc'n Corp.*, 902 F.2d at 855; *see also Alexander Proudfoot Co.*, 877 F.2d at 919. If there is a basis for asserting personal jurisdiction under the state statute, the question is whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *see also Cable/Home*

*Commc'n Corp.*, 902 F.2d at 855; *Alexander Proudfoot Co.*, 877 F.2d at 919. Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant.

Federal courts are required to construe the Alabama long-arm statute the same way the Supreme Court of Alabama would. *See Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 890-91 (11th Cir. 1983). Alabama's long-arm statute permits personal jurisdiction to the extent it "is not inconsistent with the [Alabama Constitution] or the Constitution of the United States." Ala. R. Civ. P. 4.2(b). Thus, the question here is whether assertion of personal jurisdiction over Defendants comports with the Fourteenth Amendment's Due Process Clause. *See Olivier v. Merritt Dredging Co.*, 979 F.2d 827 (11th Cir. 1992) (citing *Alabama Waterproofing Co., Inc. v. Hanby*, 431 So. 2d 141, 145 (Ala. 1983)).

The requirements of the Fourteenth Amendment's Due Process Clause are met (1) where the defendant has minimum contacts with the forum state, and (2) where the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *Olivier*, 979 F.2d at 830-31; *Madara v. Hall*, 916 F.2d 1510, 1516 (11th Cir. 1990) (quoting *International Shoe*, 326 U.S. at 316). A defendant has established minimum contacts with the forum state when he has "'purposefully availed' himself of the benefits of conducting activities in the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King v. Rudzewicz*, 471 U.S. 462, 472-73 (1985) (cleaned up); *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000).

A defendant purposefully avails itself of the privileges of conducting activities in a state "where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." *Burger King*, 471 U.S. at 475 (quoting *McGee v.*

*Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). "Thus[,] where the defendant deliberately has engaged in significant activities within a State … or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there." *Id*. at 475-76 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984); *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 648 (1950)).[1]

In assessing whether litigation "arises out of" the activities in the forum state, the Eleventh Circuit does not use "mechanical or quantitative" tests. *See Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222 (11th Cir. 2009). However, it is "not enough that there be some similarity between the activities that connect the defendant to the forum and the plaintiff's claim." *Licciardello*, 544 F.3d at 1285 n.3. A defendant's contacts with the forum must be related to the "operative facts of the controversy." *Id*.

Alternatively, a defendant may establish minimum contacts with the forum state by committing an intentional tort directed towards it. *Calder v. Jones*, 465 U.S. 783 (1984). *Calder* offers plaintiffs harmed by an intentional tort the opportunity to seek redress where the harm was felt even if the defendant has not otherwise purposefully availed themselves of that forum. *Id*. at 790 ("[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California."). This requires a showing that the defendant (1) committed an intentional tort, (2) that was directly aimed at the

---

[1] The Supreme Court has consistently held that the mere foreseeability of causing injury in another state is not a "sufficient benchmark" for exercising personal jurisdiction. *Burger King*, 471 U.S. at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)). Rather, the Court has maintained that the defendants' "conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Id*. (quoting *Volkswagen*, 444 U.S. at 297). In determining whether a defendant should have reasonably anticipated litigation in the forum, the Court has held that it is "essential in each case that there be some act by which the defendant *purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (emphasis added).

forum, and (3) caused an injury within the forum that the defendant should have reasonably anticipated. *Oldfield*, 558 F.3d at 1220 n.28 (citing *Calder*, 465 U.S. at 789-90).[2]

In other words, if a plaintiff satisfies the three prongs of the *Calder* "effects" test, the plaintiff has established minimum contacts, and the court must then determine whether exercising jurisdiction would offend traditional notions of fair play and substantial justice. This requires an analysis of the following: (1) the burden that would be placed on the defendant if jurisdiction is asserted; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining "convenient and effective relief" in the forum; (4) the interests of the "interstate judicial system" in obtaining the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering "fundamental substantive social policies." *Volkswagen*, 444 U.S. at 292 (internal citations omitted).

## III.   Analysis

The court first considers whether Plaintiff has made a prima facie showing that Defendants purposefully directed their activities at Alabama under *Burger King*. 471 U.S. at 472-73. Then, the court considers Plaintiff's claims under *Calder*.

### A.    Plaintiff Has Not Shown That Defendants Purposefully Availed Themselves of the Benefits of Conducting Activities in Alabama

Here, Plaintiff has not sufficiently alleged that Defendants purposefully availed themselves of the benefits and privileges of conducting business in Alabama. Indeed, the Complaint repeatedly refers to "third parties" that Defendants allegedly contacted with nefarious intentions, but never alleges that any of these parties are located in Alabama or that any of the contact was established

---

[2] This three-part test, commonly referred to as the *Calder* "effects" test, is best understood as a substitute for purposeful availment that is to be applied in a limited category of cases involving an intentional tort. The court notes that satisfaction of the three-part test will necessarily satisfy the requirement that the litigation arise out of activities in the forum state because it requires a causal link between the activity that was aimed at the forum and the injury complained of.

in or from Alabama. (*See* Doc. # 3). In fact, at no point has Plaintiff alleged that Defendants conducted *any* activities in Alabama. Rather, to support jurisdiction over Defendants, Plaintiff relies on the alleged injury, alleging that the effects were felt in Alabama. (*See* Doc. # 8). This is plainly inadequate. It is precisely the sort of insufficient benchmark for exercising personal jurisdiction that the Supreme Court has repeatedly rejected. *See, e.g.*, *Burger King*, 471 U.S. at 474 (citing *Volkswagen*, 444 U.S. at 295). (*See also supra* Part II). Thus, as Plaintiff has not shown Defendants purposefully availed themselves of the benefits of conducting activities in Alabama, they have not established minimum contacts with the state of Alabama under the traditional analysis and this court cannot exercise jurisdiction. Finally, in order for the court to find that it has jurisdiction under the traditional analysis, Plaintiff would also have to show that this litigation arises out of Defendants' activity in the forum state and that to exercise jurisdiction would not offend traditional notions of fair play and substantial justice. Plaintiff clearly has not satisfied this burden either. Such a showing cannot be made where, as here, Plaintiff has failed to allege that any of the actionable conduct occurred in the forum state.

      **B.**      **Plaintiff's Reliance on *Calder* is Misplaced**

In its opposition to Defendants' Motion to Dismiss, Plaintiff relies heavily on *Calder v. Jones* to establish minimum contacts. 465 U.S. 783 (1984). In *Calder*, a professional entertainer who lived and worked in California sued two employees of a Florida-based but nationally circulated magazine who allegedly published a defamatory article. *Calder*, 465 U.S. at 784-85. One was the writer of the allegedly defamatory article, who frequently traveled to California on business, and the other was the president and editor of the magazine, who had been to California only twice. *Id*. The Supreme Court held that California could exercise jurisdiction over these foreign defendants with little connection to California. The Court reasoned:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered.

*Calder*, 465 U.S. at 788-89. The Court found that, because the effects of the defendants' Florida conduct were felt primarily in California, jurisdiction was proper there. *Id*.

Here, Plaintiff falls far short of satisfying the *Calder* test. Even assuming *arguendo* that Plaintiff has properly pleaded an intentional tort,[3] it cannot satisfy the remaining prongs. First, Plaintiff does not show that Defendants' alleged tort was "directly aimed" at Alabama. Plaintiff argues that Defendants' conduct was in fact aimed directly at Alabama because they knew that the member institutions they contacted were members of the SWAC, which is headquartered in Alabama. (Doc. # 12 at 8). But Plaintiff has not explained why this constitutes tortious conduct directly aimed at Alabama. Unlike in *Calder*, Alabama cannot be said to be the "focal point" of Defendants' conduct. Defendants are not residents of Alabama. Plaintiff does not allege that any of the referenced third parties contacted by Defendants are located in Alabama. Nor does Plaintiff suggest that the allegedly improper communications took place when any relevant party to those communications was in Alabama.

Indeed, the *only* party alleged to have any degree of contact with Alabama is Plaintiff. Plaintiff suggests that because it is a resident of Alabama, Alabama is a suitable venue to remedy any action taken that harms it, regardless of whether a defendant has otherwise established minimum contacts. This is an untenable framework that would, in practice, license plaintiffs to hail any defendant into any courthouse of the plaintiff's choosing. The Court in *Calder* established

---

[3] It is unclear whether Plaintiff has done so. At first glance, there seem to be serious -- if not fatal -- defects in Plaintiff's tortious interference, defamation, and misrepresentation claims.

a test based on a defendant's contacts. The court rejects Plaintiff's attempts to reframe the test as one based on a plaintiff's contacts. Because Defendants did not directly aim their allegedly tortious conduct at Alabama, minimum contacts with the forum state cannot be established using the *Calder* effects test and personal jurisdiction cannot be exercised over them.

### IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. # 7) is due to be granted. A separate order consistent with this memorandum opinion will be entered contemporaneously.

**DONE** and **ORDERED** this December 15, 2022.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE